UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY BORNEISEN and
SHERRY BORNEISEN,

     Plaintiffs,

v.                             Case No. 8:09-CV-02539-T-17TGW

CAPITAL ONE FINANCIAL
CORPORATION d/b/a CAPITAL
ONE BANK,

     Defendant.

-----------------------------------/

## ORDER ON SUMMARY JUDGMENT MOTION

     THIS CAUSE is before this Court on:

| Dkt. 36 | Motion for Summary Judgment |
| Dkt. 37 | Affidavit of Agent Morefield |
| Dkt. 38 | Declaration of Cameron Hayes |
| Dkt. 39 | Notice of Filing Ex. A-1 |
| Dkt. 40 | Notice of Filing Ex. A-2 |
| Dkt. 43 | Notice of Filing Ex. A-5 |
| Dkt. 44 | Notice of Filing Ex. A-6 |
| Dkt. 45 | Notice of Filing Ex. A-7 |
| Dkt. 46 | Notice of Filing Ex. A-8 |
| Dkt. 47 | Notice of Filing Ex. A-9 |
| Dkt. 48 | Notice of Filing Ex. A-10 |
| Dkt. 49 | Notice of Filing Ex. A-11 |
| Dkt. 50 | Notice of Filing Ex. A-12 |
| Dkt. 51 | Notice of Filing Ex. A-13 |
| Dkt. 52 | Notice of Filing Ex. B |
| Dkt. 53 | Notice of Filing Ex. C-1 |
| Dkt. 55 | Notice of Filing Ex. D |
| Dkt. 56 | Notice of Filing Ex. E |
| Dkt. 57 | Notice of Filing Ex. F |
| Dkt. 58 | Notice of Filing Ex. G |
| Dkt. 59 | Notice of Filing Ex. H |
| Dkt. 60 | Notice of Filing Ex. I |
| Dkt. 61 | Notice of Filing Ex. J |
| Dkt. 62 | Notice of Filing Ex. K |
| Dkt. 63 | Notice of Filing Ex. L |
| Dkt. 64 | Notice of Filing Ex. M |

Case No. 8:09-CV-02539-T-17TGW

> Dkt. 65  Notice of Filing Evidentiary Support of Evidence
>          Regarding Dkt. 36 Motion for Summary Judgment
> Dkt. 66  Notice of Filing A-3
> Dkt. 67  Notice of Filing A-4
> Dkt. 68  Notice of Filing C-2
> Dkt. 72  Response to Motion for Summary Judgment
> Dkt. 73  Notice of Filing Corrected Exhibit
> Dkt. 76  Supplemental Response to Motion for Summary
>          Judgment

The complaint (Dkt. 2) contains nine Counts.  Counts I
through V are asserted by both Mr. and Mrs. Borneisen, while
Counts VI through IX are asserted solely by Mr. Borneisen.  The
complaint contains the following counts: Count I: Action for
trespass to real property; Count II: Action for intrusion of
privacy; Count III: Action for intentional infliction of
emotional distress; Count IV: Action for assault; Count V: Action
for battery; Count VI: Action for false imprisonment; Count VII:
Action for malicious prosecution; Count VIII: Action for abuse of
process; and, Count IX: Action pursuant to Florida Statutes
Chapter 559, specifically alleging violations of §559.72 and
requesting attorney's fees pursuant to §559.77. For the reasons
set forth below, the Defendant's motion will be **GRANTED IN PART
AND DENIED IN PART**.

Defendant, CAPITAL ONE FINANCIAL CORPORATION d/b/a CAPITAL
ONE BANK ("Capital One"), has filed a motion for summary judgment
as to all counts contained in the Plaintiffs' complaint.  This
Court will address each count in turn.

Case No. 8:09-CV-02539-T-17TGW

I.   Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

3

Case No. 8:09-CV-02539-T-17TGW

II.   Statement of Facts

1. Mr. Borneisen had two Capital One credit card accounts and his wife, Mrs. Borneisen, had two separate Capital One credit card accounts.  Mr Borneisen's accounts were Account No. 2217 and Account No. 2236.  (Dkt. 43 at pp. 7-9, 11-14).

2. Both Mr. and Mrs. Borneisen failed to make their respective minimum monthly payments on their individual accounts, and as a result, Capital One contacted Mr. Borneisen via his cellular telephone number.  (Id. at pp. 16-20).

3. Mr. Borneisen does not dispute that he owes Capital One the amount it sought to collect.  (Id. at pp. 16-20; p. 31:19-22).

4. Mr. Borneisen admits that he has had disputes with other credit card companies, specifically Citgo.  (Id. at p. 21; p. 31:23-24).

5. On April 12, 2008, Mr. Borneisen received a call from Capital One about his delinquent accounts and Mr. Borneisen requested that Capital One stop calling him. Capital One responded that it would call "as many times per day as wanted" and "I'll call you all day every day until you pay this."  (Id. at pp. 64:22-65-5; p. 70).

6. Approximately five minutes after receiving the April 12, 2008, Capital One phone call, Mr. Borneisen called Capital One's customer call center in Chester, Virginia, to complain.  (Id. at p. 71:13-18; p. 71:4-5; Dkt. 57 at pp. 6:11-7:2).

4

Case No. 8:09-CV-02539-T-17TGW

7. Mr. Borneisen's call to the Capital One customer service call center was transferred to Capital One Risk Specialist Alexandria Wilson ("Ms. Wilson") who was responsible for making and taking calls to and from customers.  (Dkt. 57 at p. 7:13-22).

8. Ms. Wilson verified Mr. Borneisen's identity prior to speaking with him.  (Dkt. 58 at p.3; p.6:13-23).

9. During Mr. Borneisen's phone call conversation with Ms. Wilson, Mr. Borneisen admits to calling Ms. Wilson a "dumb bitch".  (Dkt. 43 at p. 73:24).

10. Mr. Borneisen further admits to making the following statement to Ms. Wilson during their April 12, 2008, phone conversation: "[Y]ou think I don't know where Glen Allen, Virginia is? Because I grew up there. My first apartment was right next door."  (Id. at p. 73:21-23).

11. Mr. Borneisen further admits to stating, "What do I have to do, come up there and put my foot in somebody's ass before you stop calling this house eight to ten times a day?"  (Id. at p. 73:9-12).

12. Ms. Wilson's computer notes taken during the April 12, 2008, phone call with Mr. Borneisen reflect that Mr. Borneisen said that he would "[W]alk into Glen Allen and shoot everybody in there and stated that he is not paying on this account."  (Dkt. 59 pp. 8:4-9-15; Id. at p. 40).

13. A written statement made by Ms. Wilson on April 12,

5

Case No. 8:09-CV-02539-T-17TGW

2008, states that Mr. Borneisen stated he would not pay his account, that he called Ms. Wilson "every name but my name," and that he would come to Glen Allen and blow the place up. (Dkt. 57 at p. 92).

14. After taking Mr. Borneisen's incoming call, Ms. Wilson informed her supervisor, Cameron Hayes ("Ms. Hayes"), that she [Ms. Wilson] had received a threatening phone call from a customer [Mr. Borneisen] who was upset about his account and that the caller made a threat that he was going to blow up the Capital One site in Glen Allen, Virginia. (Id. pp. 16:23-17:14).

15. Pursuant to Capital One's "Notification Procedure," (Dkt. 60 pp. 44-52) which guides employees, management, and security personal in dealing with reported security incidents, Ms. Hayes notified security personnel of Mr. Borneisen's threatening phone call. (Dkt. 57 pp. 23:23-24:12).

16. Ms. Hayes contacted onsite security, Frankie Gollub, regarding the threatening phone call. Ms. Hayes was later informed that security needed to speak with Ms. Wilson because the Chesterfield County Police Department had arrived and wanted to question Ms. Wilson. (Dkt. 60 at p. 13:14-25; Dkt. 57 at p. 24:11-18).

17. Security console operator Jamaal Johnston ("Mr. Johnston") was the person who contacted the Chesterfield County Police Department. (Dkt. 61 at p. 7:6-8; p. 11:8-10; p. 36:3-6).

18. Corporal David E. Ford ("Corporal Ford") of the Chesterfield County Police Department responded to Capital One's

Case No. 8:09-CV-02539-T-17TGW

office location after receiving a call for service to respond to a threatening call that had come into Capital One's call center. (Dkt. 58 at p. 2:11-13 (p. 4 of Dep.); p. 3:8-1 (p. 5 of Dep.); p. 3:2-4 (p. 6 of Dep.))[1].

19. Corporal Ford conducted an interview with Ms. Wilson regarding the threatening call Ms. Wilson received from Mr. Borneisen. Ms. Wilson reiterated To Corporal Ford that Mr. Borneisen told her that he knew where Glen Allen, Virginia, was located and "[T]hat he would come up there and blow the place up." (Id. at p. 2:2-16 (p. 7 of Dep.)).

20. Ms. Wilson told Corporal Ford that she could not remember word-for-word what had happened. (Id.).

21. Corporal Ford made an incident report, with incident number 200804120217, detailing his interview with Ms. Wilson and the events surrounding his investigation. (Id. at pp. 15-22).

22. Capital One informed Corporal Ford that their customer calls are recorded at random and that they [Capital One] would have to verify if Mr. Borneisen's phone call was recorded. (Id. at p. 5:5-12 (p. 13 in Dep.)). Corporal Ford later learned that the phone conversation had not been recorded. (Id. at p. 5:13-18 (p. 14 of Dep.)).

23. After Corporal Ford's investigation on April 12, 2008,

---

[1] The page number references as set forth herein correspond with the assigned CM/ECF page number. The corresponding deposition pages have also been provided for depositions that contain multiple depositions pages within a single CM/ECF page.

Case No. 8:09-CV-02539-T-17TGW

regarding Mr. Borneisen's threatening phone call, Corporal Ford
had no further dealing or contact regarding this incident with
any party until he received a subpoena.  (Id. at pp. 13:19-14:5
(Dep. pp. 48, 49)).

24. FBI Special Agent Bomb Technician Morefield ("Agent
Morefield") was assigned to an FBI field office in Richmond,
Virginia, when Agent Morefield received notice from the
Chesterfield County Police Department dispatch that a threatening
phone call involving a bomb threat had been reported at 12730
Kingston Avenue in Chester, Virginia. This address is where the
Capital One call center that received Mr. Borneisen's threatening
phone call is located.  (Dkt. 63 at ¶¶4,5).

25. At Agent Morefield's request, Corporal Ford contacted
Agent Morefield upon the completion of Corporal Ford's
investigation.  (Dkt. 63 at ¶5).

26. Corporal Ford reported to Agent Morefield that on
Saturday April 12, 2008, at approximately 12:03P.M.,EDT, Ms.
Wilson received a telephone call from Mr. Borneisen while she was
working in the Capital One call center in Chester, Virginia. Mr.
Borneisen verified his identity by birth date and address at the
beginning of the telephone call.  Mr. Borneisen then became
verbally abusive by cursing and stating "I know where Glen Allen
is located.  I'll just come up there and blow the place up," or
words very similar. Ms. Wilson notified her supervisor, who in
turn, notified the Chesterfield County Police Department and
ultimately Corporal Ford.  (Id. at ¶6).

27. No one at Capital One told Corporal Ford that Capital

8

Case No. 8:09-CV-02539-T-17TGW

One wanted Corporal Ford to contact the Federal Bureau of
Investigation. (Dkt. 58 at p. 11:5-7 (p. 37 of Dep.)).

28. Between April 12, 2008 and April 18, 2010, the only
communication Agent Morefield had with Capital One was a
telephone call to determine whether Mr. Borneisen's phone call
had been recorded. Capital One verified to Agent Morefield that
Mr. Borneisen's phone call was not recorded. (Id. At ¶6).

29. Agent Morefield noted that Ms. Wilson's only interaction
with law enforcement was her response to questions by the
Chesterfield County Police Department, and that neither Ms.
Wilson nor Capital One requested the police to arrest Mr.
Borneisen. (Id. at ¶¶9,13).

30. Agent Morefield deemed Capital One's report of the
incident to be a "good-citizen report" of information, and that
"good-citizen report" is a term of art used to describe reliable
reports of possible criminal activity provided to law enforcement
by a private citizen. (Dkt 63 at ¶16).

31. After receiving Corporal Ford's police report, Agent
Morefield contacted the U.S. Attorney's Office for the Eastern
District of Virginia and discussed the initial incident report of
the Chesterfield County Police Department with Assistant U.S.
Attorney Sally Chase. (Id. at ¶¶ 7,8).

32. On April 14, 2010, Agent Morefield filed an "Affidavit
in Support of Complaint and Arrest Warrant," based on his own
investigation and that of the Chesterfield County Police with the
United States District Court for the Eastern District of

9

Case No. 8:09-CV-02539-T-17TGW

Virginia.  (<u>Id</u>. at ¶18).

33. The FBI sought Mr. Borneisen's arrest pursuant to Title 18 of the U.S.C. §844(e)[2], for using an instrument in interstate commerce, specifically, a telephone to willfully make a threat to unlawfully damage and destroy a building through means of an explosive.  (<u>Id</u>. at ¶¶18, 19).

34. Magistrate Judge Dennis W. Dohnal of the United States District Court for the Eastern District of Virginia issued a search warrant for the arrest of Mr. Borneisen after finding sufficient probable cause to effectuate the arrest.  (<u>Id</u>. at ¶20, Dkt. 2 at ¶12).

35. Mr. Borneisen was arrested by the FBI on April 15, 2008. (Dkt. 2 at ¶13).  Mr. Borneisen admits that it was the FBI and not Capital One that arrested him.  (<u>Id</u>.).

36. Capital One never asked the Agent Morefield to become involved, never requested that Agent Morefield take any action against Mr. Borneisen, never asked Agent Morefield to conduct an investigation of Ms. Wilson's report, never asked Agent Morefield to have Mr. Borneisen arrested, and never requested that Mr. Borneisen be prosecuted.  (<u>Id</u>. at ¶¶9, 22).

---

[2] This Court notes that in Agent Morefield's Affidavit in relation to this case (Dkt. 63), Agent Morefield states that the affidavit he submitted in the Eastern District of Virginia was in support of a charge in violation of Title 18 U.S.C. §844(c).  As reflected in Agent Morefield's "Affidavit in Support of Complaint and Arrest Warrant," filed in the Eastern District of Virginia (Dkt. 73-1 at pp. 9-14), the charge was pursuant to a violation of Title 18 U.S.C. §844(e).

Case No. 8:09-CV-02539-T-17TGW

37. Plaintiffs admit that the FBI, and not Capital One, filed the criminal complaint against Mr. Borneisen to effectuate his arrest.  (Dkt. 2 at ¶12).

38. At the time of Mr. Borneisen's arrest, a FBI SWAT team member asked Mrs. Borneisen for permission to search the Borneisen's residence to which Mrs. Borneisen consented. Mrs. Borneisen also consented to the search of the Borneisen's vehicles.  (Dkt. 68-1 Dep. Pp. 205:3-206:11).

39. Mrs. Borneisen signed a consent form allowing the FBI to search both the Borneisen's residence and their vehicles.  (Dkt. 68-1 attached as Ex. 6).

40. A Grand Jury indictment charged the Plaintiff with violation of Title 18 U.S.C. §844(e) which states as follows: "Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both."  (Dkt. 2 ¶15).

41. Mr. Borneisen was summoned to appear in the United States District Court for the Eastern District of Virginia on May 20, 2008, to be arraigned.  (Id.).

Case No. 8:09-CV-02539-T-17TGW

42. On September 2, 2008, the United States filed a motion to dismiss the pending charges against Mr. Borneisen. The United State's motion to dismiss was granted on September 5, 2008. (Id. at ¶16).

43. The Plaintiffs, Mr. and Mrs. Borneisen collectively, subsequently commenced this action.

III.  Discussion

1.  Count I: Action for Trespass to Real Property

A trespass occurs when there is an actionable interference with possession of land. The essence of a trespass to real property is the injury to the right of possession. 75 Am. Jur. 2d, Trespass §18.  A simple definition of a civil trespass to real property is an injury to or use of the land of another by one having no right or authority. Brown v. Solary, 37 Fla. 102, 112, 19 So. 161, 164 (1896); Guin v. City of Riviera Beach, 388 So.2d 870, 872 (Fla. 1st DCA 1996); Okaloosa County Gas District v. Enzor, 101 So.2d 406, 407 (Fla. 1st DCA 1958); 55 Fla. Jur.2d Trespass § 7 (1984); see also Atlantic Coast Line R. Co. v. Rutledge, 122 Fla. 154, 156, 165 So. 563, 564 (1935). To establish a claim for trespass, a plaintiff must show:(1) an intentional entry upon, injury to or use of their land by one having no right or authority; (2) that they were the owner or in possession of the land at the time of the trespass; (3) a lack of consent for the interference with the property; and (4) resulting in actual harm. Pitts Sales, Inc. v. King World Productions, Inc., 383 F. Supp. 2d 1354, 1357 (S.D. Fla. 2005).

Case No. 8:09-CV-02539-T-17TGW

The undisputed evidence establishes that no Capital One representative was ever physically present on Plaintiffs' property.  On the day Mr. Borneisen was arrested, there is no evidence that any employee or representative of Capital One was present.  Furthermore, there was a valid consent form signed by Mrs. Borneisen authorizing the search of Plaintiffs' premises and home.  Capital One cannot be held liable for trespass when no Capital One representative or employee was ever physically present on the Plaintiffs' property, and in any event, such an entry was privileged by consent.

Defendant's motion for summary judgment as to Count I for trespass to real property is granted.

2.   Count II: Action for Intrusion of Privacy

An action for intrusion of privacy includes four categories: (1) Intrusion of solitude, which is the physical or electronic intrusion into one's private quarters; (2) Public disclosure of private facts, which is the dissemination of truthful private information which a reasonable person would find objectionable; (3) False light, which is the publication of facts which place a person in a false light, even though the facts themselves may not be defamatory; and (4) Appropriation, which is the unauthorized use a person's name or likeness to obtain some benefits.  William Prosser, Privacy, 48 Calif.L.Rev. 383 (1960).  Florida recognizes only three actions for invasion of privacy: (1) appropriation; (2) intrusion; and (3) public disclosure of private facts.  Allstate Ins. Co. v. Ginsberg, 863 So.2d 156, 162 (Fla. 2003).  The Florida Supreme Court in Jews for Jesus v. Rapp, No. SC06-2491, --- So.2d ----, 2008 WL 4659374 (Fla. Oct. 23, 2008),

13

Case No. 8:09-CV-02539-T-17TGW

addressed the certified question by the Fourth District: Does
Florida recognize the tort of false light invasion of privacy,
and if so, are the elements of the tort set forth in section 652E
of Restatement (Second) of Torts? <u>Id</u>. at ----, 2008 WL 4659374,
at *1. The Florida Supreme Court answered the question in the
negative, concluding that Florida does not recognize the tort of
false light. <u>Id</u>. at ----, 2008 WL 4659374, at *13.

While Plaintiffs have failed to indicate which of the three
privacy actions under invasion of privacy they allege to have
occurred, this Court can rationalize only a claim for intrusion
of solitude and public disclosure of private facts.  There are no
facts, and Plaintiffs do not allege, that Capital One in any way
obtained benefits from the use of either of Plaintiffs' likeness
as would be required for a claim of appropriation.

A cause of action for public disclosure of private facts
requires the following elements: (1) the publication; (2) of
private facts; (3) that are offensive; and (4) are not of public
concern.  <u>Doe v. Univision TV Group, Inc.</u>, 717 So.2d 63, 64 (Fla.
3d Dist. App. 1998).  Plaintiffs' claim fails for several
reasons. First, the reporting of a threatening call into a
corporate call center, in which the caller called an employee a
"dumb bitch" and further insinuated that the caller knew of the
location of the call center, cannot be claimed to be offensive.
Furthermore, Mr. Borneisen was admittedly angered and made
multiple threats towards Ms. Wilson and the report of Mr.
Borneisen's threatening call is a matter of public concern.
Lastly, there simply cannot be any claim that these facts were
private.

14

Case No. 8:09-CV-02539-T-17TGW

In regard to a claim for intrusion upon solitude, which is the physical or electronic intruding into one's private quarters, such a claim cannot exist as Mrs. Borneisen consented to the search of both Plaintiffs' vehicles and their home.  Even assuming Mrs. Borneisen's consent was invalid, no representative or employee of Capital One was present at the Borneisens' home, entered the Borneisens' home, or entered any part of the Borneisens' property.  There was no intrusion on behalf of Capital One.

The Defendant's motion for summary judgment as to Count II for invasion of privacy is granted.

3.   Count III: Action for Intentional Infliction of Emotional Distress

The necessary elements required to state a cause of action for intentional infliction of emotional distress are: (1) the defendant acted recklessly or intentionally; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's emotional distress; and (4) plaintiff's emotional distress was severe.   Johnson v. Thigpen, 788 So.2d 410, 412 (Fla. 1st Dist. App. 2001).  Valid claims for intentional infliction of emotional distress are rarely, if ever, found solely on verbal harassment or abuse.  Id. at 413.  Florida federal courts have repeatedly held that repeated verbal abuse and physical contact are required to satisfy the extreme and outrageous element.  Id. at 413-414.

Mr. Borneisen fails to allege any act of physical contact that relates to their claims for intentional infliction of

15